UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANUJ KAPOOR,

                    Plaintiff,

v.                                                    Civil Action No. 1:18-00320-JJM-LDA

INFOSYS LIMITED,

                    Defendant.

FIRST AMENDED COMPLAINT

Introduction

        Plaintiff Anuj Kapoor ("Plaintiff"), by and through his undersigned counsel,

hereby brings this amended complaint against Infosys Limited ("Defendant") based upon its

knowing, willful and intentional failure to pay Plaintiff wages to which he is entitled and

interference with and restraint of Plaintiff's rights under the Family and Medical Leave Act

(FMLA).  Plaintiff seeks payment of compensatory damages, back wages, punitive damages,

liquidated damages, and attorneys' fees and costs based upon the Defendant's unlawful

withholding of his wages including overtime wages and violations of the FMLA.  In support of

this complaint, Plaintiff avers as follows:

Parties

        1.      Plaintiff is an individual who resides at 26 Belden Avenue, Unit 1435,

Norwalk, CT.

        2.      Defendant is a foreign corporation with a principal address of 6100

Tennyson Parkway, Suite 200, Plano, TX 75024 and its Registered Agent is CT Corporation

System, 450 Veterans Memorial Parkway, Suite 7A, East Providence, RI 02914.  Defendant is a

global software consultation firm.

## Jurisdiction and Venue

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332, and 29 U.S.C. § 2617(a)(2).

4.      Venue is appropriate because the complained-of conduct occurred here.

## Facts

5.      Plaintiff has worked as a non-exempt hourly waged employee for Defendant since June of 2008.

6.      Defendant generally enters into agreements with companies and agrees to provide them with staffing.

7.      Most of Defendant's employees are non-immigrant visa-holders which Defendant supplies to American companies.

8.      Defendant generally enters into two types of projects with such companies: fixed price projects and time and material projects.

9.      In connection with a fixed price project, the client is billed at a fixed agreed-upon price regardless of how many employees are assigned to the project and how many hours those employees work.

10.     In connection with a time and material project, the client is billed at a set hourly rate for each employee that performs work on the project.

11.     Defendant is paid an hourly rate per employee it provides and then pays the employee a lower hourly rate in order to realize profit.

12.     CVS Health ("CVS") procured the services of Defendant for a time and material project.

13.     Pursuant to the agreement(s) between Defendant and CVS, Defendant would bill CVS for the staffing services they provided on an hourly basis.

14.     From 2008 through 2012, Plaintiff worked in India.

15.     In September of 2012, Plaintiff was granted an H-1B visa and placed at CVS in Woonsocket, RI as a computer analyst and, eventually, technical lead.

16.     At all relevant times through June of 2017, Plaintiff was an employee of Defendant.

17.     Plaintiff was generally supposed to work five days per week, eight hours per day, for a total of forty hours per week, at CVS.

18.     Pursuant to the agreement between Defendant and CVS, CVS provided Defendant with a list of projects and the total weekly hours for which they were willing to pay in connection with each project.

19.     The CVS Resource Manager would allocate hours to each project team member each week.

20.     The number of hours allocated per employee provided by Defendant was never greater than forty per week.  As such, CVS generally refused to be billed for overtime wages.

21.     This agreement was reached despite the fact that both CVS and Defendant were well aware that Defendant's employees would necessarily have to work more than forty hours per week because some of the work (e.g., the deploying of new code) would have to be done outside of the employee's normal forty-hour work schedule, usually around midnight.

22.     Defendant's employees, including Plaintiff, were generally required to work hours in addition to those worked on CVS's premises.

23.     For example, Defendant would require employees, including Plaintiff, to participate in mandatory telephone conference calls (generally 1-2 per week) with various team members, including members in India.

24.     Due to the time difference, these calls often took place at midnight or in the early morning hours and would last for at least one hour.

25.     Defendant also required employees, including Plaintiff, to participate in mandatory internal trainings and evaluation meetings, and perform specific tasks for the benefit of Defendant separate and apart from their CVS-related duties.

26.     Because Plaintiff worked eight hours per day at CVS, these duties took place at night, in the early morning or on the weekends at Plaintiff's home.

27.     The existence of these non-client-related obligations is evidenced by the fact that employees, including Plaintiff, were provided with Defendant-issued laptops in addition to their CVS-issued laptops and Defendant reimbursed employees between $30 and $60 per month toward home internet costs.

28.     The level of reimbursement was based upon whether the employee at issue was responsible for deploying code to the CVS production environment at midnight and/or providing related support services off-hours.

29.     Due to Plaintiff's significant off-hour job duties including the deployment of code and support services, in 2015, Plaintiff began being reimbursed $60 per month for his home internet service fees after having been reimbursed $30 per month for such fees.

30.     Again, this was because employees, including Plaintiff, were required to perform CVS and non-CVS-related work from home outside of their eight-hour shifts at CVS.

31.     Plaintiff was required to fill out two time sheets, one for his work at CVS

and the other for all total hours worked for Defendant, including the hours worked at CVS.

32.     When he first started working at CVS, Plaintiff entered forty hours on his CVS timesheet but added an additional 1.5 hours of overtime work he performed on his other timesheet.

33.     Plaintiff was quickly told by his manager, Pramod Francis, that while he would approve the 1.5 hours of overtime this time, because CVS was not willing to pay overtime wages, Plaintiff could not submit a timesheet with overtime on it in the future.

34.     Plaintiff was told that if he did submit such a timesheet in the future, he would be disciplined.

35.     This was Defendant's policy even though the work Plaintiff performed over and above his forty CVS hours was mandatory and expected.

36.     Soon thereafter, Plaintiff received overtime wages for the 1.5 hours of overtime work.

37.      Despite the Defendant's policy, Plaintiff, on at least two other occasions, sought to enter a timesheet with weekly hours above forty listed.

38.     Upon entry of these timesheets, Plaintiff was given a warning and was told that there was no management approval for overtime and his timesheets were returned for re-entry.

39.     Again, this was despite the fact that Plaintiff was routinely forced to work overtime by his managers.

40.     Defendant's policies and procedures also resulted in Plaintiff not being paid for non-overtime work performed.

41.     Because CVS timesheets were submitted in the beginning of the

workweek and non-CVS timesheets were submitted after the workweek, on at least one occasion when Plaintiff had a planned but ultimately terminated vacation, his CVS timesheet stated an artificially low number of hours that conflicted with his non-CVS timesheet that accurately reported his hours.

42.     The software overwrote his non-CVS timesheet with his CVS timesheet hours.

43.     As such, months after he had already been paid according to his non-CVS timesheet, Defendant sent threatening correspondence to Plaintiff demanding the return of alleged overpayment of wages.

44.     Plaintiff immediately took steps to explain that his non-CVS timesheet (which accurately stated his hours worked) had been overwritten by the inaccurate CVS timesheet.

45.     Plaintiff was harassed regarding this issue for approximately three years before it was finally resolved and a similar issue took place yet again six months after he stopped working for Defendant.

46.     In addition, on certain occasions, Plaintiff, and other employees of Defendant, would work a partial day on location at CVS for some reason and would therefore accurately report the reduced hours in his CVS timesheet.

47.     However, due to the additional hours worked as detailed herein either for CVS or for non-CVS related business, Plaintiff would submit a forty-hour Infosys timesheet (even if the total time worked was greater than forty hours).

48.     In these instances, Plaintiff's manager would automatically reduce his Infosys timesheet to match the CVS timesheet.

49.     Therefore, despite working over forty hours that week, Plaintiff would only be paid for the number of hours worked at CVS's location.

50.     Plaintiff feared for his job and his ability to continue working in the country and, as such, continued working more than forty hours per week while only receiving compensation for forty or less hours of work per week.

51.     Plaintiff's willingness to accept his predicament began to change in April of 2017 when Plaintiff was assigned to a new CVS project and a new manager, Shiva Bhat.

52.     Between April 2017 and June 2017, Mr. Bhat forced his team, including Plaintiff, to work eleven hours shifts at CVS, engage in daily hour-long team conference calls at approximately midnight, and work nights and weekends on CVS and non-CVS-related projects.

53.     Plaintiff raised the fact that he was only being compensated for forty hours' worth of work each week and inquired about additional compensation, including overtime wages.

54.     Mr. Bhat told Plaintiff that this project required additional work that would not be compensated and that any employees who refused to work over forty hours without compensation would be terminated and sent back "to their country."

55.     Mr. Bhat told employees, including Plaintiff, that Defendant needed to provide this additional work (without charging or paying overtime) as Defendant was seeking to replace a competing software vendor as CVS's primary vendor.

56.     In addition, Mr. Bhat would often remark that the reason a company like CVS would utilize Defendant, despite there being a sufficient number of American workers who could perform the relevant work, was that no American worker would agree, like Defendant requires its employees to agree, to work overtime without additional compensation.

57.     Plaintiff, having already been reprimanded and threatened for daring to enter overtime hours in his timesheet, asked Mr. Bhat for permission to enter the overtime hours on his timesheet.

58.     Mr. Bhat quickly reprimanded Plaintiff for even asking for permission to be compensated for overtime work and reiterated that no workers on the project could ever enter overtime hours.

59.     Because he was not being compensated for any hours above forty, on one occasion, Plaintiff refused to come into work on a weekend so he could spend time with his family.

60.     On one occasion, Plaintiff also left work after his eight-hour shift had ended but before Mr. Bhat had "allowed" him to leave.

61.     Mr. Bhat reprimanded Plaintiff on both occasions and threatened to terminate him if he refused to work these additional hours without any compensation.

62.     The reason for Plaintiff missing weekend work and refusing to work at night was that his wife had suffered a serious medical issue about which Mr. Bhat and other agents of Defendant were aware.

63.     Specifically, on April 12, 2017, Plaintiff's wife was diagnosed with a miscarriage (her second in five months) and a dilation and curettage surgical procedure had to be performed.

64.     On April 14, 2017, Plaintiff's wife was admitted to the hospital due to an infection that was caused by the surgical procedure.  She was prescribed medication and was under a doctor's care for the health issue through June of 2017.

65.     Plaintiff's wife was later diagnosed with depression due to her recurrent

8

miscarriages.

66.     These facts were disclosed to Mr. Bhat in connection with Plaintiff's

inability to work at night or on weekends for a period of time in April and May of 2017.

67.     Mr. Bhat feigned concern when told about Plaintiff's wife's health issues

but refused to allow Plaintiff to miss evening or weekend work.

68.     In fact, Mr. Bhat told Plaintiff that if he missed any work due to his wife's

serious health condition, he would be terminated and "sent back to India."

69.     At no time did Mr. Bhat or the Defendant advise Plaintiff of his rights

under the FMLA or issue a notice of eligibility once they discovered that Plaintiff's request to

cease working could be subject to the FMLA.

70.     Ultimately, in June of 2017, Plaintiff could no longer continue to work

under these circumstances and under constant fear of being terminated and removed from the

country.

71.     As such, Plaintiff found a new job in New York that required him to move

from Cumberland, RI to Norwalk, CT and incur expenses related to this move.

72.     Plaintiff estimates that between May of 2015 and June of 2017, he worked

approximately one thousand eighty-four overtime hours for Defendant, each of which was over

and above his weekly forty hours, without any form of compensation.

73.     The increased overtime worked in 2017 and the refusal of Defendant to

allow Plaintiff time off from work to care for his sick wife caused Plaintiff to suffer from various

medical issues including anxiety, stress, chest pains, elevated blood pressure and an eye

condition (due to the long hours working in front of a computer).

74.     Plaintiff obtained medical treatment and incurred medical expenses for

these issues.

75.     Defendant also demanded that Plaintiff work this uncompensated overtime work at a time when Plaintiff was suffering from various family medical issues about which Defendant was aware.

76.     Plaintiff's paystubs often stated an inaccurate number of hours worked or no hours worked whatsoever.

77.     These issues with Plaintiff's paystubs were part of Defendant's attempt to conceal the Plaintiff's right to additional wages at the overtime rate of pay.

78.     In December of 2017, Defendant again mailed threatening correspondence to Plaintiff demanding repayment of wages from months earlier.

79.     Much like the incident before, this error was the result of Defendant's software overwriting his non-CVS timesheet.

80.     In February of 2018, Plaintiff contacted Defendant to resolve his claim for unpaid wages and the threatening correspondence he had received in December of 2017.

81.     In seeking to resolve Plaintiff's claims, Defendant refused to consider any hours worked in 2015 and refused to conduct an investigation into the uncompensated hours worked by Plaintiff.

82.     Because Plaintiff swiped into and out of the CVS facility every day, such an investigation would have at least confirmed the number of on-site hours Plaintiff was required to work without compensation.

83.     Instead, Defendant offered to pay Plaintiff twenty-five, and then fifty, hours' worth of wages to resolve his claim for unpaid wages.

84.     Plaintiff refused this offer given that he estimates he worked over one

thousand uncompensated overtime hours over the last three years.

85.     CVS's American employees were rarely required to work overtime hours on the various projects that Plaintiff worked on and, when they did, they were paid overtime wages.

86.     Defendant's refusal to pay wages, including overtime wages, was done willfully and with reckless disregard for the law.

87.     The actions taken by Defendant as detailed herein were intentional, arbitrary, unreasonable, tortious, willful, wanton, reckless, and in bad faith.

88.     As a result of the Defendant's actions as detailed herein, Plaintiff has suffered damages including loss of pay, loss of benefits, emotional distress, and humiliation.

## COUNT I
### (Payment of Wages – R.I. Gen. Laws § 28-14-19.2)

89.     Plaintiff repeats and realleges Paragraphs 1-88 as if set forth in full herein.

90.     Plaintiff routinely worked between forty-five and sixty hours per week while employed by the Defendant.

91.     Defendant refused to pay any compensation, including at the overtime rate of pay, for any hours worked in excess of forty per week.

92.     Defendant also refused to pay Plaintiff wages for any hours worked when not at the CVS location.

93.     As such, on certain occasions, when Plaintiff worked less than forty hours at CVS but worked at least forty hours for Defendant, Defendant only paid for the hours listed in the CVS timesheet despite the additional, non-overtime and overtime, hours being performed outside the CVS timesheet.

94.     Plaintiff does not qualify for any of the statutory exemptions contained in

R.I. Gen. Laws § 28-12-4.3.

95.     As a result of these actions undertaken by the Defendant, as described

herein, Plaintiff has suffered and continues to suffer damages.

## COUNT II
### (Protection from Retaliation – R.I. Gen. Laws § 28-14-19.3)

96.     Plaintiff repeats and realleges Paragraphs 1-95 as if set forth in full herein.

97.     When Plaintiff raised Defendant's failure to pay the wages to which he

was entitled, the Defendant threatened Plaintiff with termination and forced removal from the

country.

98.     The Defendant threatened Plaintiff because he asserted, supported, and

reported in investigations and claim determinations of the unlawful failure to pay wages.

99.     The failure to pay Plaintiff overtime wages violated state law including

R.I. Gen Laws § 28-14-1, *et seq.*

100.    Plaintiff reasonably and in good faith believed the failure to pay overtime

wages violated state and/or federal law.

101.    As a result of the Defendant's retaliatory threats, Plaintiff was ultimately

required to seek new employment as his employment was not secure and he was working

hundreds of hours without any form of compensation.

102.    As a result of Defendant's actions, Plaintiff has suffered and continues to

suffer damages.

## COUNT III
### (Family and Medical Leave Act – 29 U.S.C. § 2615(a)(1))

103.    Plaintiff repeats and realleges Paragraphs 1-102 as if set forth in full

herein.

104.    Defendant is engaged in commerce or in an industry affecting commerce.

105.    Defendant employs, and has employed, more than fifty employees for each working day during each of twenty or more calendar workweeks in the current and preceding calendar year.

106.    Plaintiff has been employed for at least twelve 7months by Defendant and for at least 1,250 hours of service with Defendant during the previous 12-month period.

107.    In April of 2017, Plaintiff attempted to exercise his right to family medical leave, to which he was entitled pursuant to 29 U.S.C. § 2612, to care for his wife who was suffering from a serious health condition.

108.    Defendant forced Plaintiff to work his regular shift and then additional uncompensated hours despite being made aware of Plaintiff's potential rights under FMLA.

109.    The actions of Defendant in failing to issue a notice of eligibility, failing to otherwise advise Plaintiff of his rights under the FMLA, and threatening him with termination if his wife's serious health condition forced him to miss work, constituted interference with, restraint against, and denial of his right to family medical leave under the FMLA in violation of 29 U.S.C. § 2615(a)(1).

110.    As a result of these violations of law as described herein, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant including: an award of actual, compensatory, punitive, and liquidated damages in an amount to be set by the jury; attorneys' fees and costs; interest thereon; and such other and further relief as to the Court seems meet and just.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a jury on all claims so triable.


ANUJ KAPOOR

By His Attorney,

ENRIGHT LAW LLC


/s/ Thomas J. Enright
Thomas J. Enright (#7356)
696 Reservoir Avenue
Cranston, RI 02910
(401) 526-2620
(401) 457-7117  FAX
tom@enrightlawoffice.com

DATED:  July 23, 2018


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of July, 2018, the foregoing document was filed and served electronically through the CM/ECF system and is available for viewing and downloading.


/s/ Thomas J. Enright